# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **DTV NETWORK SYSTEMS, INC.,** ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 4:06MC87SNL |
| ) | |
| **SKYWALKER COMMUNICATIONS,** ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This cause of action is before the Court following arbitration of alleged Robinson-Patman Act (15 U.S.C. §13) violations and breach of contract claims in connection with a distribution agreement between the parties.[1] This matter is before the Court on 1) DTV/HNS' motion for confirmation of arbitral award (#1), filed February 9, 2006; and 2) Skywalker Communications' (hereinafter referred to as simply Skywalker) motion to vacate and/or modify arbitration award (#11), filed March 13, 2006. Extensive responsive pleadings have been filed in connection with both motions.

A brief history of the litigation posture of this case is necessary prior to addressing the instant motions. On or about September 11, 2000 the parties entered into a Distributorship Agreement upon which Skywalker became a distributor of certain products manufactured by HNS. Attachment to Declaration of Paolo Morante. During the relevant time-period, Perfect 10

---

[1] The cause of action originated in this Court as <u>Skywalker Communications v. Hughes Network Systems, Inc., Perfect 10 Antenna Co., and Recreational Sports & Imports (R.S.&I)</u>, Cause No. 4:02CV1129SNL. On or about October 3, 2002 this Court stayed the case pending arbitration. On or about May 3, 2005 Hughes Network Systems (HNS) changed its corporate name to DTV Network Systems (DTV). Since the pleadings and the subject arbitration award refer to movant as HNS, the Court will do so also unless otherwise noted.

Antenna Co. and Recreational Sports & Imports (RS&I) were also distributors of HNS. On or about July 25, 2002 Skywalker filed a complaint in this Court against HNS, Perfect 10 and RS&I in connection with its distributor relationship with HNS. The crux of HNS' primary claim against HNS was that HNS charged Skywalker higher prices for like products than HNS charged Perfect 10 and RS&I; such practice being an alleged violation of Section 2(a) of the Robinson-Patman Act, 15 U.S.C. §13(a). Skywalker further asserted claims against HNS for allegedly violating Section 1 of the Sherman Act (15 U.S.C. §1), fraudulent inducement, breach of contract, tortious interference with contractual and business relationships, and unlawful termination of a franchise in violation of the Missouri Franchise Law (§407.405 *et. seq.* R.S.Mo.). On or about October 3, 2002 this Court, upon HNS' motion, granted a stay pending arbitration of the dispute.

On or about October 1, 2002 arbitration proceedings governed by the American Arbitration Association (AAA) commenced between Skywalker and HNS.[2] The claims/issues subject to the arbitration were the same claims raised in the stayed lawsuit before this Court. The location of the arbitration was Washington, D.C. and Arbitrator Gerard F. Doyle was appointed to preside over the dispute as the sole arbitrator.

On or about November 1, 2002 HNS answered the arbitration demand and raised a counterclaim against Skywalker seeking monies allegedly due it pursuant to the Distribution Agreement; i.e., payment for products ordered and received by Skywalker from HNS. On or about July 15, 2005 Skywalker voluntarily dismissed from the arbitration all claims against HNS except for the price discrimination claim under Section 2(a) of the Robinson-Patman Act.

---

[2]Perfect 10 and RS&I did not participate in the arbitration.

On or about January 13, 2006³ (following an extended hearing in September 2005), Arbitrator Doyle issued an award resolving all claims and the counterclaim between Skywalker and HNS. Attachment to Declaration of Paolo Morante. Arbitrator Doyle denied Skywalker's Robinson-Patman Act claim(s) and awarded HNS $525,264.00 on its counterclaim.

The first issues to address are those raised by Skywalker in its opposition to HNS' motion to confirm the arbitral award. Skywalker contends that 1) HNS failed to provide proper notice of its application for confirmation by serving same on Skywalker via the U.S. Marshal's Office in this district; and 2) that venue is improper in this district to adjudicate HNS' application for confirmation. Having reviewed the parties' pleadings and the relevant caselaw, the Court finds that the issue of improper service is moot and that venue lies properly with this Court to adjudicate the pending application for confirmation of the arbitral award.

The Federal Arbitration Act (FAA) provides that wherein a party seeks confirmation of an arbitral award against a party who is a non-resident of the district within which such award was made, the notice of application for confirmation "shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." 9 U.S.C. §9. Since the arbitration took place in Washington, D.C. and Skywalker is not a resident of Washington, D.C., it contends that HNS was obligated to serve it via the U.S. Marshal's Office in St. Louis (which evidently did not happen). Whether or not HNS was obligated to serve Skywalker via the U. S. Marshal's Office is a moot matter since such service was effectuated on or about March 13, 2006. *See*, Court Order #10; Document #13.

---

³This is not a typographical mistake - this dispute was in arbitration for over three (3) years.

Skywalker then argues that the FAA provides that if no court is specified in the arbitration agreement between the parties as being the appropriate venue in which to apply for confirmation of the arbitral award, "then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. §9. It contends that no court was specified in the Distribution Agreement and since the award was rendered in Washington, D.C., then venue is proper only in the United States District Court for the District of Columbia.

Section 9 of the FAA provides, in relevant part, that

> "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, *and shall specify the court*, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."

9 U.S.C. §9 (emphasis added).

HNS contends that the arbitration clause in the Distributorship Agreement provides that disputes will be settled by arbitration in accordance with the rules of the AAA, and "[j]udgment on the award rendered by the Arbitrator may be entered *in any court having jurisdiction thereof*." Attachment to Declaration of Paolo Morante. Rule 48 of the AAA Rules provides that "p]arties to an arbitration under [the AAA Rules] shall be deemed to have consented that judgment upon the arbitration award may be entered *in any federal or state court having jurisdiction thereof*."[4]

---

[4]Counsel for HNS failed to submit or file a copy of Rule 48 of the AAA Rules; however, since Skywalker did not object to this recitation of Rule 48, the Court will take judicial notice that it reads as stated by HNS, except for the added emphasis.

4

HNS argues that the agreement does in fact specify the court in which to adjudicate its application for confirmation as "any court having jurisdiction thereof"; and since there is no dispute as to this Court's original diversity jurisdiction in this matter, venue is proper in this Court.

This Court finds that venue is proper in this Court for several reasons. Firstly, the language in 9 U.S.C. §9 is clearly permissive, not mandatory, since Congress chose to use the word "may" instead of "must". *See*, Cortez Byrd Chips, Inc. v. Bill Harbert Const.Co., 529 U.S. 193, 204 (2000); Nordin v. Nutrisystem, Inc., 897 F.2d. 339, 343-44 (8th Cir. 1990)(appellate court refers to venue language in 9 U.S.C. §9 as being "permissive"); Van Horn, et. al. v. Van Horn, et. al., 393 F.Supp.2d. 730, 741 n.5 (N.D.Iowa 2005)(citing Cortez Byrd Chips, *supra.*). Secondly, since this Court initially had diversity jurisdiction over this lawsuit, and has entered a stay in this litigation pending arbitration, it retains further power to confirm any subsequent arbitration award. Smart v. Sunshine Potato Flakes, L.L.C., 307 F.3d. 684, 685 (8th Cir. 2002) *citing* Cortez Byrd Chips, 529 U.S. at 202.

Thus, this Court clearly has both jurisdiction and venue to address the confirmation, vacation, and/or modification of the arbitral award in this action.

This dispute regarding the arbitral award in this action is governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§9-16, which established a deferential standard of review of an arbitrator's award by the courts. Moses H. Cone Mem.Hosp. v. Mercury Const. Co., 460 U.S. 1, 24 (1983). The courts must accord "an extraordinary level of deference" to the underlying award itself "because federal courts are not authorized to reconsider the merits of an arbitral award `even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" Stark v. Sandberg, Phoenix & Von Gontard, et. al., 381 F.3d. 793, 798 (8th Cir. 2004)(internal citations omitted); *see also*, Bob Schultz Motors v. Kawasaki Motors Corp., 334

F.3d. 721, 724 (8th Cir. 2003)("A court asked to confirm, modify, or vacate an arbitrator's award owes the arbitrator's decision great deference."). In fact, an award must be confirmed even if the reviewing court is convinced the arbitrator committed a serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Stark, at 798 *quoting* Bureau of Engraving, Inc. v. Graphic Communications Int'l Union, Local 1B, 284 F.3d. 821, 824 (8th Cir. 2002). Thus, the FAA only allows a district court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a).

In addition to these statutory grounds for vacating an arbitration award, the Eighth Circuit has recognized two (2) additional "extremely narrow" non-statutory grounds for vacating an arbitration award where such award is either "completely irrational" or "manifests a disregard for the law." Manion v. Nagin, et. al., 392 F.3d. 294, 298 (8th Cir. 2005) *citing* Hoffman v. Cargill, 236 F.3d. 458, 461 (8th Cir. 2001); *see also*, Stark, at 798. An arbitration award is considered to be "completely irrational" if "it fails to draw its essence from the agreement." McGrann v. First Albany Corp., 424 F.3d. 743, 749 (8th Cir. 2005); Manion, at 298; Stark, at 799. "An award

6

draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." Stark, at 799 (citations omitted).

As previously noted, an arbitration award may be vacated where the arbitration award "manifests a disregard for the law." An award manifests disregard for the law when an arbitrator clearly identifies the applicable, governing law, but then ignores it. McGrann, at 749; *see also*, St. Johns Mercy Med. Ctr. v. Delfino, 414 F.3d. 882, 884 (8th Cir. 2005). The party asserting this ground for vacating the arbitration award "must show that the arbitrators were fully aware of the governing law and refused to apply it." Biscanin, et. al. v. Merrill Lynch & Co., et. al., 407 F.3d. 905, 907 (8th Cir. 2005) *citing* Stark, at 802. Furthermore, "t]he disregard must appear clearly in the record of the arbitration, and `there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." Biscanin, at 907 *quoting* Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d. 672, 674-75 (8th Cir. 2004). This burden is difficult to successfully carry because "[a]rbitrators are not required to elaborate their reasoning supporting an award." Stark, at 802 *quoting* El Dorado Sch. Dist. #15 v. Continental Cas. Co., 247 F.3d. 843, 847 (8th Cir. 2001)(internal citations omitted).

In addition to Section 10's grounds for vacating an arbitration award, Section 11 of the FAA provides for three (3) grounds only upon which a reviewing court may modify an arbitration award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

7

> (c) Where the award is imperfect in matter of form not affecting
> the merits of the controversy.

9 U.S.C. §11. A "district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." Stark, at 799 *quoting* Legion Ins. Co. v. VCW, Inc., 198 F.3d. 718, 721 (8th Cir. 1999).

Finally, although the reviewing court must accord an extraordinary level of deference to the underlying award itself, this deference "is not the equivalent of a grant of limitless power." Stark, at 799 *quoting* Leed Architectural Prods., Inc. v. United Steelworkers of America, Local 6674, 916 F.2d. 63, 65 (2nd. Cir. 1990). "[C]ourts are neither entitled nor encouraged simply to `rubber stamp' the interpretations and decisions of arbitrators." Stark, at 799 *quoting* Matteson v. Ryder Sys., Inc., 99 F.3d. 108, 113 (3rd Cir. 1996). However, the reviewing court is nevertheless prohibited from reconsidering the merits of an award nor is it permitted to substitute its remedial judgment for that of the arbitrator. St. John's Mercy Med. Ctr., at 885; *see also*, Hoffman v. Cargill, at 462. "Courts have absolutely no authority to reconsider the merits of an arbitration award, even when the parties allege the award rests on factual errors or on a misinterpretation of the underlying contract." McGrann, at 748. "Indeed, an award must be confirmed even if a court is convinced the arbitrator committed a serious error, so `long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" Stark, at 798 *quoting* Bureau of Engraving, at 824.

Skywalker challenges the arbitration award on three (3) grounds: 1) the arbitrator was "guilty of misconduct" in allowing HNS' expert to testify in rebuttal regarding new calculations meant to rebut Skywalker's expert's reply report, and in so doing further disallowed Skywalker to present evidence of certain business transactions involving Perfect 10 in its cross-examination of HNS' expert during his rebuttal testimony; 2) the arbitrator "manifestly disregarded the law" in

8

finding that HNS had sufficiently supported its counterclaim for monies due and owed for goods delivered by HNS to Skywalker; and 3) the arbitrator's award in favor of HNS' counterclaim was irrational because it was not supported sufficiently by the evidence; i.e. HNS had failed to prove that the goods in question were actually delivered to Skywalker.

### **Misconduct as to evidentiary rulings**

Skywalker argues that the arbitrator found against it because he allowed the admission of a "surprise rebuttal expert report" and excluded "pivotal impeachment evidence". Essentially, Skywalker is asking this Court to review and reweigh the evidence that was before Arbitrator Doyle which this Court is clearly prohibited from doing. The arbitration award reflects Arbitrator Doyle's careful consideration of the rebuttal and sur-rebuttal testimony; as well as the subject Exhibit 268. Skywalker's own expert significantly altered his damages theory on rebuttal and the arbitrator provided Skywalker's counsel ample time to review the sur-rebuttal testimony, as well as Exhibit 268. Furthermore, the arbitrator's decision regarding the admissiblity of Skywalker's Perfect 10 evidence is not subject to this Court's review. Upon consideration, the arbitrator's conclusion that "Skywalker has not demonstrated, to a reasonable degree of certainty, that it suffered antitrust injury as a result of price discrimination by HNS on set top boxes"; nor "that the shortcomings in Skywalker's evidence of lost sales or profits are reflected in the damages presentation by its expert, which does not permit a reasonable approximation of the amount of damages without speculation or guesswork" is sufficiently supported by the evidence submitted to the arbitrator. *See*, Manion, at 298-99.

### **Arbitrator's Award Irrational and/or Evidences a Manifest Disregard for the Law**

Firstly, it appears to the Court that Skywalker has lumped together its argument that the award was both irrational and evidenced a manifest disregard for the law; however, these are

9

separate and distinct theories upon which to vacate an arbitration award. In order for an award to manifestly disregard the law, Skywalker must demonstrate that Arbitrator Doyle clearly identified the applicable, governing law and then proceeded to ignore it. *See*, St. John's Mercy Medical Center, at 884; Manion, at 298; Stark, at 802. Skywalker has made no such showing. It simply argues that HSN failed to produce sufficient evidence that certain goods had been delivered and not paid for by Skywalker. It cites a general proposition that under Maryland law, the burden of proof is on the party asserting the affirmative of an issue. Skywalker's Memorandum in Support (#12), pg. 8. It fails to demonstrate where in the award Arbitrator Doyle cited this "relevant law" and then ignored it. Thus, the manifest disregard doctrine as defined by the Eighth Circuit Court of Appeals does not apply.

*Assuming arguendo*, that the arbitrator's decision had noted this general principle of common law, his award does not evidence a manifest disregard. HNS had copies of the invoices in question and Skywalker's Chief Financial Officer, Rebecca Kotsis, testified that not only had the goods been delivered, but in fact, had been re-sold. HNS' Exhibit D, pgs. 1079-1087. Furthermore, she testified that even taking into account the credits HSN owed Skywalker, Skywalker still owed HNS in excess of $500,000.00. HNS' Exhibit D, pg. 1093. There is nothing in the award that demonstrates that the arbitrator did not find that HNS had carried its burden of proof on the issue of monies due and owed by Skywalker.

As to the award being irrational, Skywalker totally fails to make any argument that the arbitrator's award failed to draw its essence from the Distributorship Agreement between the parties. It simply argues that there wasn't any evidence that any of the products which HNS claimed to have delivered to Skywalker were actually delivered. This is not a proper or legally sufficient argument to support a claim that the arbitrator's award is irrational. Essentially,

10

Skywalker wants this Court to reconsider the merits of the award based upon some speculative error of fact and this Court is not authorized to do so.

The limitations set upon this Court in reviewing an arbitrator's award are strict. A reviewing court may not set an award aside simply because it might have interpreted an agreement differently or because the arbitrator erred in interpreting the law or in determining the facts. Stroh Container Co. v. Delphi Industries, et. al., 783 F.2d. 743, 751 (8th Cir. 1986). "Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and law, can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner." Stroh, at 751. This observation is equally applicable to the matter at hand. Skywalker seeks to have this Court provide the same review of an arbitration proceeding as an appellate court would give a district court judgment but as the Stroh Court points out that is not possible.

> " . . . however, for parties to the arbitration process to realize that it is not the most perfect alternative to adjudication. The present day penchant for arbitration may obscure for many parties who do not have the benefit of hindsight that the arbitration system is an inferior system of justice, structured without due process, rules of evidence, accountability of judgment and rules of law . . . We write this response not to denigrate the use of arbitration in commercial transactions. We write only to provide notice that where arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles. Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication."

Stroh, at 751, n12.

In light of the Court's findings, the Court will grant DTV Network Systems' motion for confirmation of arbitral award (#1) and deny Skywalker's motion to vacate and/or modify arbitration award.

Dated this ___17th___ day of October, 2006.

*Stephen N. Limbaugh*
SENIOR UNITED STATES DISTRICT JUDGE